EVA DREIKURS FERGUSON, Indiv. and as Ex'r of the Estate of Sadie E. Dreikurs, Plaintiff-Appellee, v. BILL BERGER ASSOCIATES, INC., Defendant-Appellant (Bill Berger, Defendant).

First District (2nd Division)   No. 1—97—2991

Opinion filed December 8, 1998.—Rehearing denied January 6, 1999.

Mark H. Barinholtz, of Law Office of Mark H. Barinholtz, of Chicago, for appellant.

Jeffrey T. Saltz, of Morrison, Kamins & Saltz, of Chicago, for appellee.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

In this permissive interlocutory appeal taken pursuant to Supreme Court Rule 306 (155 Ill. 2d R. 306), defendant, Bill Berger Associates, Inc., appeals from the denial of its motion to dismiss the complaint of plaintiff Eva Dreikurs Ferguson. In that complaint, which was filed by Ferguson individually and as executor of the estate of Sadie E. Dreikurs, the plaintiff sought a declaration cancelling the literary agency relationship between the defendants, Bill Berger[1] and Bill Berger Associates, Inc., and the plaintiff's deceased father, Rudolf, and

---

[1] On the court's own motion, defendant Bill Berger was dismissed as a

her deceased mother, Sadie. She also sought an accounting of royalty and commission transactions received by the defendants in connection with that relationship. Defendant, Bill Berger Associates, Inc. (hereinafter referred to as defendant), a corporation with its principal place of business in New York, moved to dismiss plaintiff's action, contending that the action violated the forum selection provision of a contract entered into between the plaintiff's father and a German publisher. The defendant alternatively contended that the complaint should be dismissed on the grounds of *forum non conveniens*. The trial court denied the defendant's motion, and the defendant's petition for leave to appeal to this court was granted pursuant to Supreme Court Rule 306. For the reasons discussed below, we affirm the denial of the defendant's motion to dismiss on the grounds of *forum non conveniens*. We also find that we are without jurisdiction to hear defendant's appeal from the portion of the order denying dismissal on the grounds of forum selection.

## BACKGROUND FACTS

The pleadings and affidavits of the parties alleged the following facts. The plaintiff is the daughter of deceased author Doctor Rudolf Dreikurs, owner of certain copyrights in connection with books he authored or co-authored. Upon Rudolf's death, the ownership rights to those copyrights passed to plaintiff's mother, Sadie E. Dreikurs, and upon her death temporarily passed to plaintiff as executor of Sadie's estate. (Upon the closure of that estate, the plaintiff will succeed to all ownership rights in the copyrights.) The pleadings alleged that Rudolf entered into a literary agency relationship with the defendant in 1963 and also at that time executed a publication contract between Meredith Press, a division of Meredith Publishing Company, and himself for the publication of "Children: The Challenge," a book he co-authored.[2] The complaint also alleged that in 1964 Rudolf executed an agreement with a German publisher, Ernst Klett Verlag, for the German language rights pertaining to that book. (The defendant alleged that it had prepared these contracts for the parties' signatures.) Each of these agreements, which were attached to plaintiff's complaint and defendant's motion to dismiss, set forth defendant's status as Rudolf's agent and authorized the defendant to collect and receive monies due Rudolf and

---

party defendant because the plaintiff only alleged conduct by Bill Berger Associates. The court found that Bill Berger could not be personally liable unless the plaintiff pierced the corporate veil, which the plaintiff had not attempted to do in her complaint. Bill Berger is not a party to this appeal.

[2]Penguin USA succeeded Meredith Press and is now the American publisher of the book "Children: The Challenge."

to otherwise act on Rudolf's behalf. The German agreement, unlike the Meredith Press agreement, contained forum selection and choice of law clauses, respectively requiring that all disputes be settled by "defendant's competent home courts, or at claimant's election by arbitration in Zurich, Switzerland," and that the terms of the agreement be governed and interpreted according to the laws of the State of New York.

The plaintiff's complaint alleged that no independent written contracts were executed between Rudolf, Sadie or Eva and the defendant authorizing the defendant to collect royalties and to retain a portion thereof, to make payments to other representatives out of the royalty payments received, or to enter into publishing agreements or addenda to those agreements on their behalf. The plaintiff sought a declaration that, pursuant to the common law and to the Durable Power of Attorney Law (755 ILCS 45/2—1 et seq. (West 1996)), any authority of the defendant to represent the Dreikurs' copyright interests, pursuant to any agency agreement or power of attorney, terminated by operation of law as of the date of Sadie's death on February 26, 1996.[3] The plaintiff sought a further declaration that the defendant was not authorized to permit Paul & Peter Fritz AG (unidentified in the complaint) to execute an addendum to the German contract on June 6, 1996.

In its motion to dismiss, the defendant alleged that the gravamen of the plaintiff's complaint arose from execution of an addendum to the German agreement concerning the right to sell Rudolf's book in quality paperback volume form. The defendant alleged that the addendum was executed by Paul & Peter Fritz AG, the successor to Linder AG, defendant's foreign subagent. (The 1964 German Agreement authorized Linder AG, "acting on behalf of Bill Berger Assoc.," to act as Rudolf's agent with respect to collecting money due under the terms of the agreement and to act on Rudolf's behalf.) The defendant cited to the forum selection provision of the original German agreement and the requirement that the dispute be resolved in the defendant's home court, namely, the New York court. The defendant alternatively argued that the dispute should be dismissed on the basis of *forum non conveniens*. In this argument, which was supported by the affidavit of William Berger and by a letter written by Peter S.

---

[3]As the defendant notes in its brief, the plaintiff refers to various dates in her pleadings and appellate brief upon which she asserts the agency relationship ceased, including the date of Rudolf's death and the date of Sadie's death. This conflict does not impact upon the resolution of the *forum non conveniens* issue before this court.

Fritz of Paul & Peter Fritz AG, the defendant contended that trial in New York would be more convenient and would better serve the ends of justice. The defendant argued that such a conclusion was warranted by a consideration of the location of the parties and witnesses, the location of the documents, the relative difference in the economic burdens imposed upon the parties by the choice of the forum state, the place of execution and performance of the contract, the choice of law provision in the German agreement, and the public interest factor of burdening Illinois courts with a matter having no "meaningful connection" to Illinois.

In his affidavit attached to defendant's motion to dismiss, William Berger, president and sole shareholder of the defendant corporation, averred that he was a New York resident and that the defendant was a New York corporation with its principal place of business being in New York. He stated that he was 74 years of age, legally blind, and unable to travel without assistance. He further averred that he never travelled to Illinois to transact literary agency business; that he did not contact Rudolf Dreikurs in Illinois to offer him literary representation; and that Berger Associates did not solicit business in Illinois. He stated that the contract between Rudolf and Meredith Press relative to "Children: The Challenge" was negotiated from the office of Bill Berger Associates in New York; that the contract was last signed by the publisher's agent in New York and was to be performed in New York; and that Meredith Press' assignee, Penguin USA, is headquartered in New York. Berger averred that the contract between Rudolf and the German publisher Ernst Klett Verlag was negotiated from the office of Bill Berger Associates in New York and from the office of Berger's subagent, Linder AG (now known as Paul & Peter Fritz AG), in Switzerland. He stated that all royalties were paid to and collected by Bill Berger Associates in New York and that payments to Doctor Dreikurs and his heirs were made from New York. He also stated that, to the best of his knowledge, all of the files and persons involved with the publishing contract, other than the foreign edition, were New York residents. He further stated that all of the publishing industry and literary agency experts that he would retain to render opinion testimony resided in New York.

Also attached to defendant's motion as an exhibit was a letter from Peter S. Fritz of Paul & Peter Fritz AG. In the letter, Fritz stated that Linder AG underwent a name change in 1984 to Paul & Peter Fritz AG and that the German publisher Ernst Klett Verlag underwent a name change to Klett-Cotta Verlag. He stated that neither entity operated offices in Illinois and that each of their principal contacts in the United States was with agents and publishers in New York. Fritz

also stated that travel to Illinois in connection with the lawsuit would be very costly and inconvenient whereas travel to New York could be connected with other business matters to offset travel costs.

In response, the plaintiff moved to strike the letter exhibit because it was unverified, unsworn and not in affidavit form as required by Supreme Court Rule 187 (134 Ill. 2d R. 187). The plaintiff also argued that the defendant could not rely on the forum selection provision of the German agreement because the defendant was not a party to that contract. The plaintiff further argued that the gravamen of her complaint was not the execution of the addendum to the German agreement but, rather, defendant's agency status and the termination of that status by operation of law upon the death of Sadie Dreikurs. The plaintiff contended that her complaint also cited the Meredith Press contract, which did not have a forum selection clause, and the Illinois Durable Power of Attorney Law (755 ILCS 45/2—1 *et seq.* (West 1996)). With respect to the defendant's *forum non conveniens* contention, the plaintiff argued that Illinois was her home forum; that deference should be given to her choice of forum; and that either party would have to bear the burden of out-of-state litigation, including the costs of document production and witness travel. The plaintiff further contended that her action only would require the testimony of plaintiff and William Berger and that the inconvenience to William Berger was not sufficient to justify the dismissal of the Illinois action.

The trial court denied defendant's motion to dismiss, finding that the Illinois court could easily determine the key issue in the case which dealt with the relationship between Rudolf Dreikurs and the defendant and the alleged termination of that relationship. The court found that the defendant could obtain evidence from William Berger by way of an evidence deposition if necessary. The court also rejected defendant's forum selection contention, finding that the forum selection provision was only present in the German agreement and that that agreement did not create the agency relationship between Rudolf Dreikurs and the defendant.

The defendant appeals, contending that the trial court abused its discretion in denying the motion to dismiss on the basis of violation of the forum selection clause and on the basis of *forum non conveniens.*

## DISCUSSION

### I. Forum Selection

■ Initially, we must determine whether we have jurisdiction to review defendant's appeal from the denial of his motion to dismiss on

the grounds of a forum selection clause violation.[4] It is axiomatic that an appellate court may only hear appeals from final judgments, unless an exception specified by the supreme court rules apply. Ill. Const. 1970, art. VI, § 6; 155 Ill. 2d R. 301; *Saddle Signs, Inc. v. Adrian*, 272 Ill. App. 3d 132, 650 N.E.2d 245 (1995); *Bezan v. Chrysler Motors Corp.*, 263 Ill. App. 3d 858, 636 N.E.2d 1079 (1994). Supreme Court Rules 306, 307 and 308 (155 Ill. 2d Rs. 306, 307, 308) provide for appeals from certain specified orders that are not final judgments either by leave of the appellate court (155 Ill. 2d Rs. 306, 308) or as of right (155 Ill. 2d R. 307). In the instant case, the defendant's appeal was taken pursuant to Supreme Court Rule 306. That rule permits appeals from orders of the circuit court granting new trials and orders granting or denying certain motions by permission of the appellate court. 155 Ill. 2d R. 306. The defendant contends that subparagraphs (a)(2) and (a)(4) provide support for a conclusion that this court has jurisdiction over an appeal involving forum selection. Those provisions allow permissive appeals as follows:

"(2) from an order of the circuit court allowing or denying a motion to dismiss on the grounds of *forum non conveniens*, or from an order of the circuit court allowing or denying a motion to transfer a case to another county within this State on such grounds;

\*\*\*

(4) from an order of the circuit court granting or denying a motion for a transfer of venue based on the assertion that the defendant is not a resident of the county in which the action was commenced, and no other legitimate basis for venue in that county has been offered by the plaintiff." 155 Ill. 2d Rs. 306(a)(2), (a)(4).

Supreme court rules are to be construed in the same manner as statutes. 134 Ill. 2d R. 2, Committee Comments. Thus, when construing supreme court rules, the court must ascertain and give effect to the intention of the supreme court by examining the language of the

---

[4]Persuasive argument can be made that the instant case does not pose a forum selection question. As noted in the facts of this opinion, the forum selection clause exists in the German agreement. The plaintiff argued in the trial court that the defendant was not a party to that agreement and could not claim any rights thereunder. The plaintiff also argued that her lawsuit did not involve a dispute with respect to the German contract but, rather, involved a relationship formed independent of and outside of that contract, namely, the agency relationship between the defendant and Rudolf Dreikurs and his heirs. However, since for the reasons discussed below, we have no jurisdiction to review orders denying motions to dismiss on the basis of forum selection clauses, we need not reach the issue of the applicability of the forum selection clause in the instant proceedings.

rules. *Killoren v. Racich*, 260 Ill. App. 3d 197, 632 N.E.2d 621 (1994). " 'If the language is clear, the court must give it effect and should not look to extrinsic aids for construction.' " *Killoren*, 260 Ill. App. 3d at 198, 632 N.E.2d at 622, quoting *Weingart v. Department of Labor*, 122 Ill. 2d 1, 7, 521 N.E.2d 913 (1988). So, too, when the language is plain and unambiguous, courts cannot add exceptions, limitations or otherwise amend or alter a statute, no matter how beneficial or desirable the result. *E.g., Nottage v. Jeka*, 172 Ill. 2d 386, 667 N.E.2d 91 (1996); *In re M.M.*, 156 Ill. 2d 53, 619 N.E.2d 702 (1993); *In re Rami M.*, 285 Ill. App. 3d 267, 673 N.E.2d 358 (1996).

■ The defendant concedes that Supreme Court Rule 306 does not on its face set forth the appellate court's authority to review the denial of a motion to dismiss on the grounds that the proceedings are violative of a forum selection clause in a contract. The defendant contends, however, that the requirements for the determination of a motion to dismiss for *forum non conveniens* are "substantially identical" to those for forum selection and that the practical effect of the denial of a motion to dismiss on either ground is the same. While we would agree that the effect of a denial of the dismissal motion on either basis is similar, in that the action would not be dismissed and would proceed to trial in the court in which it was brought, we disagree with defendant's contention that the determination of each ground requires a similar analysis. A forum selection issue requires application of contract principles and contract construction to determine the parties' preexistent contractual forum choice. As will be discussed more fully below, however, a *forum non conveniens* issue requires consideration of noncontractual factors including principles of convenience and fairness to choose between two forums proposed by the parties at the time of the controversy. Clearly, these legal theories are not "substantially identical" such that the denial of a motion to dismiss on the ground of forum selection is not a denial of a motion to dismiss on the ground of *forum non conveniens*. Thus, if we were to allow defendant's appeal on the forum selection issue, we would be expanding the scope of Rule 306(a)(2) beyond the grounds specified therein, thereby usurping the rulemaking authority of the supreme court. See *Nottage*, 172 Ill. 2d 386, 667 N.E.2d 91; *In re M.M.*, 156 Ill. 2d 53, 619 N.E.2d 702; *In re Rami M.*, 285 Ill. App. 3d 267, 673 N.E.2d 358.

■ Defendant's forum selection issue also does not fall within Supreme Court Rule 306(a)(4), which allows permissive appeal from the denial of a motion for transfer of venue to a court within another county in the state. Defendant's motion for dismissal based on forum selection did not seek the transfer of plaintiff's action to another county within the state but, rather, the transfer of plaintiff's action to

another state. Thus, defendant's forum selection contention is beyond the plain language of Rule 306(a)(4), and we are without authority to grant leave to appeal from the nonfinal order disposing of that issue.

## II. *Forum Non Conveniens*

■ In reviewing the denial of defendant's motion to dismiss based on *forum non conveniens*, which we have specific authority to consider (155 Ill. 2d R. 306(a)(2)), we note the standard of review applicable to the trial court's order. The trial court is vested with broad discretion to determine whether a motion to dismiss for *forum non conveniens* should be granted. It is not the function of this court to substitute its judgment for that of the trial court or even to determine whether the trial court exercised its discretion wisely. *Elling v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 311, 317, 683 N.E.2d 929, 934 (1997). This court must only determine whether the trial court abused its discretion. *E.g., McClain v. Illinois Central Gulf R.R. Co.*, 121 Ill. 2d 278, 520 N.E.2d 368 (1988); *Trent v. Caterpillar, Inc.*, 234 Ill. App. 3d 839, 599 N.E.2d 1145 (1992). A trial court has abused its discretion when no reasonable person would take the view adopted by it. *E.g., O'Connell v. City of Chicago*, 285 Ill. App. 3d 459, 463, 674 N.E.2d 105, 108 (1996).

■ *Forum non conveniens* is an equitable doctrine under which principles of convenience and fairness are weighed in order to choose between two or more forums having jurisdiction. *E.g., Kwasniewski v. Schaid*, 153 Ill. 2d 550, 607 N.E.2d 214 (1992); *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 554 N.E.2d 209 (1990). This common law doctrine applies to actions involving interstate as well as intrastate matters. *Vinson v. Allstate*, 144 Ill. 2d 306, 579 N.E.2d 857 (1991). When ruling on a *forum non conveniens* motion, the court must consider private interest factors affecting convenience of the litigants and public interest factors affecting administration of the courts. *Vinson*, 144 Ill. 2d 306, 579 N.E.2d 857; *Trent*, 234 Ill. App. 3d 839, 599 N.E.2d 1145. Relevant private factors include accessibility of sources of proof, availability of witnesses, availability of compulsory service of process to compel the appearance of unwilling witnesses, costs of obtaining witnesses, viewing the premises in question, if appropriate, convenience of the parties, and " 'all other practical problems that make trial of a case easy, expeditious and inexpensive.' " *Trent*, 234 Ill. App. 3d at 842-43, 599 N.E.2d at 1147, quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 91 L. Ed. 1055, 1062, 67 S. Ct. 839, 843 (1947); accord *Kwasniewski*, 153 Ill. 2d at 553, 607 N.E.2d at 216; *Vinson*, 144 Ill. 2d at 310, 579 N.E.2d at 859; *Griffith*, 136 Ill. 2d at 106, 554 N.E.2d at 211. Relevant public factors include "the

administrative difficulties flowing from court congestion; 'a local interest in having localized controversies decided at home'; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Bland v. Norfolk & Western Ry. Co.*, 116 Ill. 2d 217, 224, 506 N.E.2d 1291, 1294 (1987), quoting *Gulf Oil Corp.*, 330 U.S. at 509, 91 L. Ed. at 1063, 67 S. Ct. at 843; accord *Kwasniewski*, 153 Ill. 2d at 553, 607 N.E.2d at 216; *Vinson*, 144 Ill. 2d at 311, 579 N.E.2d at 859. An additional public factor is the appropriateness of having the case heard in a forum familiar with the state law that governs the case. *Simantz v. Prime Motor Inns, Inc.*, 213 Ill. App. 3d 813, 573 N.E.2d 234 (1991).

■ A further consideration in ruling on a *forum non conveniens* motion is the plaintiff's choice of forum. "A plaintiff is given the right to select the forum, and unless the public and private interest factors strongly weigh in favor of transfer, a plaintiff's choice of forum will rarely be disturbed." *Kwasniewski*, 153 Ill. 2d at 553, 607 N.E.2d at 216. Less deference is given where the plaintiff is not a resident of the chosen forum (*Kwasniewski*, 153 Ill. 2d at 553, 607 N.E.2d at 216, citing *McClain*, 121 Ill. 2d 278, 520 N.E.2d 368); but, even when the plaintiff's forum choice is entitled to less deference, the test remains whether the relevant factors, viewed in their totality, strongly favor transfer to the forum suggested by the defendant. *Griffith*, 136 Ill. 2d at 108, 554 N.E.2d at 212; *Elling*, 291 Ill. App. 3d at 318, 683 N.E.2d at 934.

■ In the instant case, the defendant first argues that no deference should be given to the plaintiff's choice of forum, Cook County,[5] because the plaintiff's county of residence is Madison County. We disagree. When a *forum non conveniens* motion involves choosing between interstate forums rather than intrastate forums, the plaintiff's home forum is the entire state in which the plaintiff resides rather than the county within the state in which the plaintiff resides. *Kwasniewski*, 153 Ill. 2d at 553, 607 N.E.2d at 216 ("[a] plaintiff's 'home forum' for purposes of an interstate *forum non conveniens* motion is the plaintiff's home State"). Thus, in the instant case, while the plaintiff does not reside in Cook County, her home forum is any

---

[5]The plaintiff's parents resided in Cook County before their deaths, and Sadie Dreikurs' estate, for which the plaintiff was executor, was being probated in Cook County at the time the instant action was filed. We note that the instant action was filed by the plaintiff in her individual capacity and as executor of Sadie's estate. The defendant contends that the estate was made a party to this action solely for the purpose of creating home forum status in Cook County. We need not reach this issue, however, since, as discussed in the text of this opinion, any county in the State of Illinois is a home forum when choosing between interstate forums.

county within the State of Illinois. Unless the private and public interest factors strongly weigh in favor of transfer, the plaintiff's choice of forum must prevail. *Kwasniewski*, 153 Ill. 2d at 553, 607 N.E.2d at 216; *Griffith*, 136 Ill. 2d at 108, 554 N.E.2d at 212.

With respect to the private and public interest factors, the defendant's motion to dismiss argued that those factors strongly weighed in favor of dismissing plaintiff's Illinois action. As to the private interest factors, the defendant cited the following considerations: William Berger's blindness and inability to travel without assistance; the location of all of defendant's witnesses in New York or Europe, the latter finding travel to New York more convenient; the probability that defendant's experts would reside in New York; the location of most, if not all, of the relevant documents in defendant's New York office; the cost of transporting witnesses and documents to a location other than New York; the fact that the contract was executed and performed in New York; and the applicability of New York law to the contract dispute. As to the private interest factors, the defendant contended that an Illinois jury would have no meaningful connection with the circumstances of the litigation and that the court dockets in New York would allow for somewhat faster disposition.

As discussed above, the trial court considered these factors and found that they did not strongly favor transfer to New York. We cannot say that the court's conclusion was an abuse of discretion or that no reasonable person would adopt that view. First, the inconvenience of defendant's witnesses having to travel to Illinois is not persuasive. As the trial court noted, it is not clear that the testimony of individuals from the New York and European publishers would be relevant to resolution of the issues in controversy. Plaintiff's complaint asserts the existence of a contractual agency relationship between defendant and Rudolf Dreikurs which, apparently, was never memorialized in a written contract. The contracts between Rudolf and the New York and German publishers do not purport to set forth the terms and conditions of the agency relationship that should control between Rudolf, his heirs and the defendant. Those contracts appear to draw upon the preexistence of such an agency relationship insofar as they set forth the publishers' obligations to remit all sums due Rudolf under the respective contracts to Rudolf's agent, the defendant. Thus, since it is unlikely that defendant's witnesses from the publishing companies could testify regarding the contractual relationship between the Dreikurs and the defendant, the need for their testimony is speculative at best; and the inconvenience to them in testifying in Illinois would be of little import. See *Hulsey v. Scheidt*, 258 Ill. App. 3d 567, 577, 630 N.E.2d 905, 912 (1994) (where parties have not yet identified

their witnesses, the court should not engage in speculation as to their travel to testify). Similarly, the location of defendant's expert witnesses in New York is of minimal weight. Since those witnesses would be compensated for their travel, any inconvenience with regard to travel would not appear to be pivotal. See *Hulsey*, 258 Ill. App. 3d at 577, 630 N.E.2d at 912 ("a compensated expert would be more inclined to testify wherever instructed"); see also *Griffith*, 136 Ill. 2d at 112, 554 N.E.2d at 214 ("the location of expert witnesses should not be accorded undue weight in the *forum non conveniens* analysis; otherwise, parties to a lawsuit could easily frustrate the \*\*\* doctrine through the selection of their expert witnesses"). Moreover, even if the testimony of any of these witnesses would be pertinent and even if they would be otherwise reluctant to travel to Chicago to testify, their testimony could be made available by way of an evidence deposition. See *Kwasniewski*, 153 Ill. 2d at 554, 607 N.E.2d at 216, citing 134 Ill. 2d Rs. 202, 203, 204, 212(b).

The only witness whose testimony would be clearly relevant and significant, and who would be most inconvenienced by travel to Illinois, is William Berger, defendant's president. Berger suffers from blindness and needs assistance in order to travel. However, that condition would be so even if Berger were to testify in New York. Moreover, as the trial court suggested, the defendant could submit Berger's evidence deposition in New York, thereby alleviating travel to Illinois, an option also available to defendant's other out-of-state witnesses. See *Kwasniewski*, 153 Ill. 2d at 554, 607 N.E.2d at 216, citing 134 Ill. 2d Rs. 202, 203, 204, 212(b). Balanced against Berger's inconvenience would be the expense and inconvenience of out-of-state travel to the plaintiff were the case to be heard in New York. See *Simantz*, 213 Ill. App. 3d at 815, 573 N.E.2d at 235 ("one of the parties will be forced to bear the expense and inconvenience of out-of-State travel").

Similarly, defendant's claim that most of the relevant documents are held in its New York office would not weigh in favor of dismissal. In present times, the location of documents is of little importance because they can be photocopied and transported with ease and with little expense. See *Hayes v. Fireman's Fund Mortgage Corp.*, 272 Ill. App. 3d 271, 278, 649 N.E.2d 582, 586 (1995) ("[t]he location of the documents is becoming an increasingly less significant factor in the *forum non conveniens* analysis"). Moreover, as the plaintiff contends, she, too, has numerous documents which she would have to transport to New York upon the granting of defendant's motion.

With respect to public interest factors, the defendant argued that it would be unfair to burden an Illinois jury with a case that has no meaningful connection to its state and where the jury would have to

apply New York law. According to the defendant, New York law would apply because its contract with the Dreikurs was performed from its New York office, because the New York publishing contract with Meredith Press was last signed in New York and because the German contract contained a choice of law clause requiring the application of New York law. The plaintiff contends that Illinois law, specifically, the Illinois Durable Power of Attorney Law (755 ILCS 45/2—1 *et seq.* (West 1996)) and the common law, should be applied to resolve the instant action and the issue of when, if ever, the agency relationship between the Dreikurs and the defendant terminated. She further contends that, even if New York law governed the instant action, the applicable laws of New York and Illinois are identical such that the burden upon the Illinois court to apply New York law would not be burdensome.

The trial court noted when ruling on defendant's motion to dismiss that the determination of which state law would apply to the controversy was far from clear and that further facts about the agency relationship need to be presented before the determination of which state law to apply could be made. We agree. As discussed above, no written contract was executed by Rudolf and the defendant to establish defendant's relationship to Rudolf and his literary agent. There is no indication that that relationship was not established by oral contract or other course of dealings between Rudolf and the defendant. While the German agreement acknowledged defendant as Rudolf's agent for purposes of collecting monies due Rudolf under that contract, that agreement could have been an implementation of the preexisting relationship between Rudolf and the defendant. Moreover, the German agreement did not purport to cover the gamut of the relationship between those two parties. Consequently, while the German agreement provided for application of New York law to any controversy regarding its terms, it did not purport to apply New York law to all controversies arising out of the agency relationship between Rudolf and the defendant. The same is true of the Meredith Press contract, which in fact does not purport to have a choice of law provision, although it was allegedly last signed in New York and could, for that reason, militate in favor of the application of New York law.

Even assuming the application of New York law to the instant controversy, however, that factor would not weigh in favor of dismissal of the Illinois action. Illinois courts can readily adapt to apply foreign laws to actions pending before them. See *Simantz v. Prime Motor Inns, Inc.*, 213 Ill. App. 3d 813, 573 N.E.2d 234 (1991) (finding that Illinois court could apply Arizona law in a common law negligence action). Thus, the fact that the choice of law may refer to another juris-

diction would not suffice to overcome the connection between the plaintiff and Illinois arising from plaintiff's residence in this state. See *Simantz*, 213 Ill. App. 3d at 816, 573 N.E.2d at 236, stating:

> "Illinois courts can apply the law of a foreign State in appropriate circumstances, although they should not be burdened with doing so unless there are strong policy reasons and Illinois has a strong connection with the case. [Citation.] Inasmuch as Illinois is the home of two of the plaintiffs and is their chosen forum, there are strong policy interests involved and strong connections with the case."

Here, the Dreikurs were all residents of Illinois, and Illinois was the plaintiff's chosen forum (see *Kwasniewski*, 153 Ill. 2d at 553, 607 N.E.2d at 216). See also *Weiser v. Missouri Pacific R.R. Co.*, 98 Ill. 2d 359, 456 N.E.2d 98 (1983) (a state has an interest in providing a forum when the plaintiff is a resident of that state). Moreover, the burden of applying New York law on the issue of agency termination upon operation of death, if that law were to apply, would not even require any special adaptation since, as the plaintiff asserts, New York and Illinois law on the subject is identical. Compare *Washington v. Caseyville Health Care Ass'n*, 284 Ill. App. 3d 97, 672 N.E.2d 34 (1996), and 755 ILCS 45/2—5 (West 1996), with *Ferrentino v. Dime Savings Bank, F.S.B.*, 159 Misc. 2d 690, 606 N.Y.S.2d 554 (Sup. Ct. 1993) (death of principal revokes the authority of the agent). Compare also *Olson v. Eulette*, 332 Ill. App. 178, 74 N.E.2d 609 (1947), and *Farns Associates, Inc. v. South Side Bank*, 93 Ill. App. 3d 766, 417 N.E.2d 818 (1981), with *Farmers' Loan & Trust Co. v. Wilson*, 139 N.Y. 284, 34 N.E. 784 (1893) (defining agencies coupled with an interest which are not terminated upon death of principal).

As a second public interest factor, the defendant contended in its reply to plaintiff's response that the instant lawsuit could be concluded more expeditiously in New York. The defendant supported this contention with an affidavit of a New York attorney admitted to that state's bar in 1948, with "an active general trial practice." The attorney indicated that, based upon information furnished him by clerks from the New York Supreme Court, a jury or nonjury case would take approximately 1 to 1½ years from inception to completion. Defendant's reply also stated that, according to its Illinois attorney, matters in the courts of Cook County took two to five years to complete. At the hearing on the defendant's dismissal motion, plaintiff's counsel asked the court to disregard defendant's congestion argument because it was raised for the first time in defendant's reply. On appeal, the plaintiff argues this contention should not have been considered by the trial court because it was not supported with reliable statistical information and because the New York attorney's affidavit was hearsay.

Initially, we note that the court made no rulings with respect to the admissibility of court congestion information propounded by the defendant in its reply. However, it is presumed that the trial court considered only admissible evidence. *E.g., People v. Koch*, 248 Ill. App. 3d 584, 618 N.E.2d 647 (1993) (the trial judge is presumed to disregard all incompetent evidence). In that regard, we presume that the court disregarded the affidavit of the New York attorney because it contained hearsay statements from the New York court clerks regarding the length of time for a case to reach trial in New York. Generally, an expert giving an opinion can rely upon facts or data that need not be admitted or admissible in evidence, if of a type reasonably relied upon by experts in the field. *Wilson v. Clark*, 84 Ill. 2d 186, 417 N.E.2d 1322 (1981); *Moran v. Erickson*, 297 Ill. App. 3d 342, 696 N.E.2d 780 (1998). See generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 703.1 (6th ed. 1994) (hereinafter cited as M. Graham, Illinois Evidence). In such a case, the expert can disclose those facts and data and they would be admitted for the limited purpose of showing the basis of his opinion. The "[f]acts, data or opinions reasonably relied on by an expert witness are *not* by virtue thereof substantive evidence; reasonably relied on facts, data, or opinions constitute substantive evidence only if otherwise admitted into evidence." (Emphasis in original.) M. Graham, Illinois Evidence § 703.1, at 583. Here, however, assuming the New York attorney was qualified to give an expert opinion as to the length of time for case disposition by trial in New York, a close reading of his affidavit shows that he did not give such an opinion. Rather, he merely disclosed information told to him by New York court clerks. In fact, he concluded his affidavit with the statement, "[s]uch is the information furnished to me." As such, his affidavit serves only as a conduit for the hearsay obtained from the New York court clerks and thereby remains inadmissible.

Presumably, too, the court did not consider the representation made in defendant's reply that, "in the experience of defendant's counsel, matters routinely proceed from 2 to 5 years before coming to trial." That assertion was not supported by the affidavit of defendant's Illinois counsel, setting forth defense counsel's qualifications to make such an assertion, nor was it supported by official court statistical information which is admissible on the issue of court congestion. See, *e.g., Evans v. MD Con, Inc.*, 275 Ill. App. 3d 292, 297, 655 N.E.2d 1016, 1020 (1995); *Boston v. Rockford Memorial Hospital*, 140 Ill. App. 3d 969, 972, 489 N.E.2d 429, 432 (1986) (annual report of Administrative Office of Illinois Courts is proper source to consider when assessing relative court congestion in counties in Illinois). Moreover, notwithstanding the absence of admissible evidence on the issue of Il-

linois court congestion, we note that when deciding *forum non conveniens* issues, the trial court is in the better position to assess the burdens on its own docket. *Boner v. Peabody Coal Co.*, 142 Ill. 2d 523, 538-39, 568 N.E.2d 883, 891 (1991). Here, it is clear from the record that the trial court considered the docket burdens in the courts of Cook County and determined that the matter could be handled speedily in that county. We cannot say that the court's conclusion in that regard was erroneous.

The trial court considered the private and public interest factors raised by the defendant in its motion to dismiss. It is evident from the record that the trial court weighed those factors and found that none strongly weighed in favor of transfer in contravention of the plaintiff's forum choice. It is not the function of this court to substitute its judgment for that of the trial court. *Elling*, 291 Ill. App. 3d at 317, 683 N.E.2d at 934. While we might weigh the factors differently, we cannot say that the weight given by them by the trial court was an abuse of discretion or that no reasonable person would have reached the same conclusion. See *McClain*, 121 Ill. 2d 278, 520 N.E.2d 368; *Trent*, 234 Ill. App. 3d 839, 599 N.E.2d 1145; see also *O'Connell*, 285 Ill. App. 3d 459, 674 N.E.2d 105. Thus, we affirm the trial court's denial of transfer.

In related argument, the defendant contends that the denial of transfer would lead to a denial of its due process rights. Specifically, the defendant contends that if the trial were held in Illinois and if William Berger was unable to attend that trial and instead submitted to an evidence deposition, the defendant would be denied the opportunity to present evidence on its own behalf, to be present for cross-examination of the plaintiff, and to attend the trial and observe the demeanor of the witnesses. We fail to see any merit to defendant's contention. First, it appears from the context of this argument that the defendant may be interchanging itself with its president and sole shareholder, William Berger, an individual. It would be incorrect to do so because the defendant is a corporate entity separate and apart from William Berger. See *Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 278 Ill. App. 3d 1084, 1088, 664 N.E.2d 328, 331 (1996), citing *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 172, 632 N.E.2d 1015, 1017 (1994) ("[a] corporation is a legal entity which exists separate and distinct from its shareholders, directors and officers"). Here, there has been no attempt by the plaintiff to pierce the corporate veil. See generally *Jacobson*, 278 Ill. App. 3d at 1088, 664 N.E.2d at 331 (a party seeking to pierce the corporate veil has the burden to make a substantial showing that the corporation is really a dummy or sham for another dominating entity). Moreover, Berger's

potential absence from the Illinois trial would not deny the defendant corporation its right to a hearing as its interests would be represented by counsel and it would have the opportunity to present evidence, including Berger's evidence deposition, cross-examine the plaintiff's witnesses, and observe the witnesses' demeanor. See generally *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 649 N.E.2d 384 (1995); *Turner v. Campagna*, 281 Ill. App. 3d 1090, 667 N.E.2d 683 (1996); *Department of Public Aid ex rel. Moutria v. Roach*, 258 Ill. App. 3d 491, 630 N.E.2d 551 (1994) (procedural due process mandates that a party be afforded notice and an opportunity to be heard and to conduct a defense). Berger also could be available in New York to defendant's counsel for consultation purposes, prior to and during trial, and would be able to give input with respect to facts derived from plaintiff's witnesses previously deposed. Thus, defendant's due process argument is meritless.

   In separate argument, the defendant contends that the trial court abused its discretion by not considering a letter it attached to its motion to dismiss. As discussed above, the letter from Peter Fritz of Paul & Peter Fritz AG, defendant's German subagent, was submitted in support of the defendant's contention that its witnesses would be inconvenienced if they had to travel to Illinois for trial. The plaintiff moved to strike the letter because it was not in affidavit form as required by Supreme Court Rule 187(b) (134 Ill. 2d R. 187(b)). The trial court initially granted the motion to strike but later at that same hearing ruled that it would deny the motion and leave the letter, which it found immaterial, "for púrposés of the record."

   In the context of this argument the defendant makes the assertion, without case citation or óther support, that Supreme Court Rule 187(b) does not limit the parties' filings with respect to a motion to dismiss under *forum non conveniens* to affidavits only. While we believe this argument is incorrect, it is not necessary to decide this question since the defendant has waived the issue. See 155 Ill. 2d R. 341(e)(7); *Bank of Illinois v. Thweatt*, 258 Ill. App. 3d 349, 630 N.E.2d 121 (1994); *Eckiss v. McVaigh*, 261 Ill. App. 3d 778, 634 N.E.2d 476 (1994) (Supreme Court Rule 341(e)(7) requires that argument be supported with citation of authorities and the failure to do so results in waiver).

   In any event, the defendant concedes that the trial court denied the motion to strike and did allow the letter into the record. The defendant argues, however, that the trial court "completely disregarded or regarded prejudicially" the material in the letter. We disagree. The record shows that the court considered the content of the letter but found that Fritz's value to the defendant as a witness was negligible. The court found that Fritz could not testify concerning the 1963

agency agreement between Rudolf Dreikurs and the defendant, that is, how it came about, where it came about, when it came about and the nature of the relationship. As a result, the court gave little weight to the inconvenience that Fritz stated he would experience in having to travel to Illinois. We cannot say that such a conclusion was an abuse of discretion.

For the foregoing reasons, the order of the circuit court of Cook County, denying defendant's motion to dismiss on the grounds of *forum non conveniens*, is affirmed.

Affirmed.

RAKOWSKI and COUSINS, JJ., concur.